# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 12, 2012

No. 11-50761

Lyle W. Cayce
Clerk

In the Matter of:  LISA ANN GALAZ,

                              Debtor,

RAUL GALAZ,

                              Appellant,

versus

LISA ANN GALAZ,

                              Appellee.

Appeal from the United States District Court
for the Western District of Texas
No. 5:10-CV-1031

No. 11-50761

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]


Raul Galaz appeals a decision granting Lisa Ann Galaz's setoff defense, allowing her to deduct her past-due child support obligations from the amount he owes her from an unrelated litigation instead of paying him the past-due amount. In affirming the bankruptcy court, the district court ruled that Raul waived arguments not presented to the bankruptcy court and that waiting to grant or deny setoff until after the unrelated litigation was not an abuse of discretion. Concluding that Raul waived some arguments, and the bankruptcy court correctly addressed the others, we affirm.


I.

Raul and Lisa Ann were divorced in 2002. In 2007, Lisa Ann filed for bankruptcy under Chapter 13. Although a 2002 state-court order required her to obtain and maintain health-insurance coverage and equally share with Raul the medical-care costs for their children, she failed to do so starting in January 2008. In March 2008, she also removed to bankruptcy court a lawsuit involving claims against Raul and others (the "Adversary Proceeding").

In July 2009, Raul moved for relief from the automatic stay to obtain back child support; in response, Lisa Ann sought permission to pursue claims for back child support against him. The issue went to arbitration, where Raul was ordered to make monthly support payments, but Lisa Ann was directed to pay

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50761

$9,727 to Raul for previous medical expenses and attorney's fees (all of which were deemed in the nature of child support).

Raul then began trying to collect that support payment. In December 2009, he filed in the bankruptcy court a motion to direct payment of child support obligations and to require the trustee to issue him the $9,727. Lisa Ann responded that the Adversary Proceeding against Raul was for far more than $9,727; she invoked setoff as a defense. A hearing was held in January 2010, but the bankruptcy court continued consideration of the motion until after the trial in the Adversary Proceeding. When the trial was over, the bankruptcy court said it was taking the matter under advisement, and it continued consideration indefinitely.[1]

In August 2010, Raul filed a renewed motion to direct payment, contending that the court could not delay awarding him the $9,727 merely because there was a possibility that Lisa Ann would obtain a judgment against him. The court held a hearing and declared that the defense of setoff applied, explaining that although the judgment had not yet been entered in the Adversary Proceeding, the specific amount would be known soon. In November 2010, the bankruptcy court issued a judgment in the Adversary Proceeding for $500,000 against Raul.

The district court affirmed. Though the court located Texas caselaw supporting Raul's argument that the Adversary Proceeding's judgment and the child support obligation payments lacked mutuality, the court found he had waived that argument by failing to raise mutuality in the bankruptcy court. It also declared that the bankruptcy court did not abuse its discretion by granting con-

---

[1] Although the court issued two orders shortly thereafter—one granting Raul's motion and the other vacating that grant—those orders were unexplained, and nothing suggests they are relevant.

No. 11-50761

tinuances rather than deciding to grant or deny the motion to direct payment of child-support obligations.

## II.

In his *pro se* appeal, Raul argues that the district court erred in holding that he waived the argument that his child support claim could not be offset against the judgment for lack of mutuality. Neither this court nor a district court will review an issue presented for the first time on appeal of a bankruptcy court's decision. *Crosby v. Orthalliance New Image (In re OCA, Inc.)*, 552 F.3d 413, 424 (5th Cir. 2008). Raul offers two arguments for reversing the finding of waiver: (1) He repeatedly maintained that the child support obligations could not be offset, which adequately raised the issue in the bankruptcy court, and (2) the bankruptcy court revealed that it recognized he was arguing a lack of mutuality when it noted that setoff would be for unrelated debts. Both of these arguments fail.

Setoff is a longstanding fixture in bankruptcy law having its roots in equity. Without setoff, where a debtor and creditor owe each other separate debts, the solvent party would pay the bankrupt party the amount owed, then stand in line with other creditors to try to recover the debt the bankrupt party owed it. That would often result in the solvent party's paying the full amount of its debt and getting back only a fraction of what it was owed from the bankrupt party. Offset, however, allows the solvent party to reduce the amount paid by the amount the bankrupt party owes him.

Under § 553, setoff has three requirements: (1) The creditor has both a claim against and owes a debt to the debtor, both of which arose pre-petition;

No. 11-50761

(2) the claim and the debt are mutual, and (3) both claim and debt are valid and enforceable. 11 U.S.C. § 553(a). But here, the debtor—not the creditor—is seeking a setoff, so § 558 applies instead of § 553. *See* 11 U.S.C. § 558. Because § 558 "preserves to the Debtor the defenses it would have had pre-petition," some courts conclude that the court must examine the transaction as though the bankruptcy had not been filed, eliminating the requirement that both debts be pre-petition obligations.[2] In *In re Braniff Airways, Inc.*, 42 B.R. 443, 452-53 (N.D. Tex. Bankr. 1984), and *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036-37 (5th Cir. 1987), it was held that even under § 558, pre-petition debt cannot be set off against post-petition debt, because then they would not be mutual.[3]

Although Raul argued that setoff was improper, his justification was that child support is a priority claim; that is distinct from the lack-of-mutuality argument he presented on appeal. An argument must "be pressed, and not merely intimated. In short, the argument must be raised to such a degree that the trial court may rule on it." *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1128 (5th Cir. 1993) (internal quotation marks and citations omitted). If a party does not argue a point plainly enough for the trial court to recognize and rule on it, that argument is waived on appeal.

---

[2] *See Second Pa. Real Estate Corp. v. Papercraft Corp. (In re Papercraft Corp.)*, 127 B.R. 346, 350 (Bankr. W.D. Pa. 1991).

[3] We explain this to clarify that the prepetition/postpetition distinction is still relevant in this circuit in § 558 cases, given that the district court cited *In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 4755253, at *3 (Bankr. E.D. Va. Dec. 3, 2009), for the proposition that courts ignore the pre-petition/post-petition distinction in § 558 cases. That decision is not the law in this circuit. Because Raul waived his mutuality arguments by failing to raise them in the bankruptcy court, the split over this issue is not determinative here.

No. 11-50761

The record demonstrates that Raul argued that setoff was inappropriate because the child support claim was of a higher priority,[4] but now he contends that child support is different from other types of debt and therefore cannot be set off against ordinary debt. To support this, he reasons that the payments are really for the child—merely held by the parent in a fiduciary capacity—and that such support payments are treated differently from other debt under Texas Law (*i.e.*, not terminating on death of the obligee).

These new lack-of-mutuality arguments are completely distinct from Raul's initial argument to the bankruptcy court against setoff, to the effect that child support claims are of a higher priority. A priority claim is one that gets paid from the estate before others, providing its holder a greater likelihood of repayment, and does not generally affect the applicability of setoff.[5] Because Raul presented the argument that his claim's priority status prohibited setoff, the bankruptcy court specifically addressed the issue of priority when it made its decision. In the oral discussion of the order, the court stated:

> I'm not saying the claim shouldn't be paid or shouldn't be allowed as a priority claim. What I'm saying is . . . the claim against Mr. Galaz by Lisa Galaz . . . far exceeds the claim by Mr. Galaz against Lisa Galaz.
>
> . . . .
>
>    The claim of Mr. Galaz is non-dischargeable, in any event, and

---

[4] *E.g.*, Renewed Motion To Direct Payment of Child Support Obligations, ¶ 3 ("Child support obligations are an unsecured priority claim, and take precedence over all other unsecured non-priority claims."); *id.* ¶ 7 ("This court cannot deny the immediate application of RAUL GALAZ's judgment (and priority claim against Debtor's estate) based on the mere possibility of Debtor's future judgment against Raul Galaz."). Raul also claims (unopposed by Lisa Ann) that he made this priority argument at other times before the bankruptcy court.

[5] 5 COLLIER ON BANKRUPTCY ¶ 553.03[3][f][vi] ("In general, the priority of a claim is irrelevant under section 553 . . . .").

will be credited against any judgment, or it will be allowed as a non-dischargeable priority claim in the event that the judgment is set aside for any reason.

The priority nature of the claim is still given its full value: It gets fully credited against the amount Raul owes Lisa Ann, or if that judgment against him is set aside, he retains a priority claim. Because no argument was presented that some other theory against mutuality existed, none was addressed.

Raul also provides a portion of the record that he argues shows the bankruptcy court recognized mutuality was at issue. The court asked, "There's really no defense to [the child support claim], other than offset, for unrelated claims against [Raul]?" Raul maintains that by recognizing that the only way setoff applied was between unrelated claims, the bankruptcy court recognized that mutuality was at issue. The quoted statement, however, does not indicate a recognition that mutuality was disputed. The context shows that the court had been asking Lisa Ann's counsel whether there was any defense to Raul's request for the funds. After Lisa Ann's counsel described that she was seeking a larger judgment against Raul, the court made that statement. It was likely just descriptive, given that the defense was actually setoff of an unrelated claim.

In fact, the mutual obligations that the doctrine of setoff contemplates usually arise from separate transactions and thus are unrelated.[6] The court was likely just describing that this fit into the usual case rather than the rarer situation in which setoff was for more closely related claims.[7] The relatedness of the

---

[6] *Id.* ¶ 553.03[3][f].

[7] Because the court had recently been discussing with the parties that previously the Galazes had argued about who owed whom child support payments, finally resolving that

(continued...)

No. 11-50761

facts underlying the debts is not part of the inquiry and does not call mutuality into question. Therefore, this brief note by the bankruptcy court that the setoff was for an unrelated claim does not demonstrate that the court recognized Raul to be arguing that setoff should be disallowed for lack of mutuality.

### III.

Raul argues that the bankruptcy court abused its discretion in waiting to decide on his motion to award him child support based on the possibility that Lisa Ann would win an unrelated lawsuit against him. We review grants or denials of continuances for abuse of discretion. See *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007). Raul's argument has two components: (1) The judgment had not yet been awarded, so it was only a possibility when he filed his motion; and (2) child support obligations are exempt from the automatic stay in the bankruptcy code. No party cited caselaw concerning whether waiting until the unrelated lawsuit resolved was within or beyond the bankruptcy court's discretion.

First, the fact that the judgment had not yet been handed down does not prohibit the bankruptcy court from finding setoff appropriate. Setoff is not prohibited just because the claim sought to be used for setoff is disputed.[8] The court had already scheduled a trial to assess Lisa Ann's claim and had been dealing with that case against him for many months. Because a defense of setoff had been advanced, it makes sense that the bankruptcy court would want to wait on

---

[7](...continued)
issue through arbitration, the court may have been unsure whether the alleged setoff was for a related claim.

[8] *See* 5 COLLIER ON BANKRUPTCY ¶ 553.03[1][e].

ordering money paid out of the estate to determine whether setoff was appropriate, as long as the court did not believe doing so would cause undue delay. With a trial in the Adversary Proceeding already scheduled for the near future, the bankruptcy court could reasonably believe there would be no undue delay in waiting to see whether money really needed to be paid out of the bankruptcy estate. Moreover, because the Adversary Proceeding had been moved to the bankruptcy court and had been there for some time, the court presumably knew the claim was not frivolous.

Raul's additional argument—that because child-support obligations are exempt from the automatic stay in the bankruptcy code, the bankruptcy court cannot delay releasing those funds—misunderstands the scope of that provision: Section 362(b) does exempt child support obligations from the automatic stay, but refusing to stay something as a matter of course is not the same as guaranteeing immediate payment. Section 362 is not meant to put child support obligations beyond the reach of the entirety of the bankruptcy system; it merely recognizes—similar to the fact that such claims receive priority status—that these claims are considered more important.

For example, § 362(b)(2)(B) still stays collection of such obligations from property of the bankruptcy estate. Nothing in the Bankruptcy Code suggests the bankruptcy court should not consider child-support obligations in the overall administration of the estate, so if justice requires waiting on paying out the obligations, the bankruptcy court may do so in a specific case. Exempting child-support obligations from the automatic stay means that usually these claims should not be delayed by bankruptcy; it does not mean there are no exceptional circumstances in which such a delay is warranted.

No. 11-50761

Here, a defense of setoff was claimed, based on a soon-to-be-tried claim that the bankruptcy court had managed long enough to know was not frivolous. Moreover, regardless of the outcome after the continuance, Raul would be entitled to the benefits of his claim: He either maintains a non-dischargeable priority claim, or he gets a valuable setoff. On these facts, we cannot say the court abused its discretion in waiting to determine whether setoff was warranted before ordering payments from the bankruptcy estate.

The judgment of the district court, affirming the bankruptcy court, is AFFIRMED.